THE DEPARTMENT OF REVENUE, Plaintiff-Appellee, *v.* JOSEPH BUBLICK & SONS, INC., *et al.*, Defendants-Appellants.

First District (5th Division)    Nos. 61860, 62047 cons.

Opinion filed April 9, 1976.

SULLIVAN, J., dissenting.

Altheimer & Gray, of Chicago (Lionel G. Gross and Kenneth R. Gaines, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Ann Plunkett Sheldon, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant, Max L. Bublick, appeals from a judgment holding him personally liable as an officer of defendant Joseph Bublick & Sons, Inc. (corporation) for $107,932.73 in unpaid retailers' occupation taxes. He contends that the evidence did not establish (1) that plaintiff instituted proper proceedings for collection of the unpaid taxes from the corporation before proceeding against him personally, nor (2) that he wilfully failed to file the correct tax returns.

Plaintiff's complaint, filed January 17, 1974, alleged in Count I that the corporation sold tangible personal property for use and consumption during the period from July 1969 thru April 1972; that it failed to perform its statutory duty to file correct forms showing its retail sales and to pay a tax as required under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 440-453); and that $92,092.35 plus interest, less $5,000 paid on account of said liability by the corporation, was due and owing. In Count II, plaintiff alleged, *inter alia*, that defendants Max L. Bublick, David Holland, Morris Bublick and Sol N. Garland organized, owned, operated, supervised and managed the corporation; that although plaintiff took "proper proceedings" against the corporation, it was "unable to pay the amounts due plaintiff"; that the individual defendants were personally liable for the taxes due according to section 13½ of the Act[1] (Ill. Rev. Stat. 1971, ch. 120, par. 452½) by virtue of their wilful failure to file; and that the individual defendants were similarly liable in the amount of $87,092.35 plus interest.

---

[1] Section 13½ provides:

"Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed in accordance with Section 3 of this Act[1] and who wilfully fails to file

The corporation's answer stated that it also sold personal property for resale and that its failure to pay the balance due resulted from "an inability to make said payment or payments, together with an unwillingness of plaintiff to accept partial payments over a period of time." The individual defendants denied that they had breached any duty under section 13½ of the Act and further stated "that plaintiff has attempted to collect the taxes due from Joseph Bublick & Sons, Inc., and that Joseph Bublick & Sons, Inc. is unable to pay the amounts due."

The following pertinent evidence was adduced at trial.

*For plaintiff:*

*Max L. Bublick under section 60*

He was a vice-president and treasurer of the corporation from July 1969 through April 1972. It was his duty to see that the store had sufficient merchandise to continue operation. He was the only officer with authority to assemble financial information for the purpose of preparing sales tax returns. He determined what would be reported either as a sale for resale or as a sale for use and consumption. He was unable to obtain records from his transient customer peddlers who purchased property for resale in the Maxwell Street area near the corporation's store. He estimated "roughly about 50%" of the gross receipts represented sales for resale. The sales memoranda did not indicate whether a given transaction represented a sale for resale. However, if a sale was made to the ultimate consumer the sales slip did show that a sales tax had been charged and was paid. When he became aware that he had to keep resale numbers on sales to peddlers he began to pay taxes on 100% of his gross receipts. On June 29, 1972, he admitted that $92,342.36 was due and owing to plaintiff. A $5,000 payment was subsequently paid to plaintiff. The corporation offered to give the keys to the store to plaintiff, but plaintiff declined this offer. The corporation no longer operates the store. The corporate assets were reduced to eleven or twelve thousand dollars in cash and put into a corporate account. This account has been offered to plaintiff.

When questioned by his attorney, he stated that he was in the store about one hour per week. Although he would take the receipts from the register, he never saw the sales slips. The corporation met several times with plaintiff. On one occasion the corporation offered to pay an additional $5,000 down and $2,000 per month, but plaintiff never responded to this offer.

On redirect, he admitted plaintiff had indicated that it would accept 25 or 30 percent down and the balance in 10 or 12 months.

---

such return or to make such payment to the Department shall be personally liable for such amounts, including interest and penalties thereon, in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department; and the personal liability of such officer or employee as provided herein shall survive the dissolution of the corporation."

*David Holland under section 60*

He was a vice-president and the secretary for the corporation. He did not have any corporate duties regarding financial data that applied to the monthly sales tax returns. He never signed any tax returns for the corporation.

*Sol N. Garland under section 60*

He was the assistant secretary and bookkeeper for the corporation. He signed all tax forms submitted to plaintiff. He prepared the tax forms from the figures in the cash receipts journal. Defendant directed him to insert 50% of the cash receipts total in the journal on the "total receipts from sales for that month" entry on the tax form.

When questioned by the court, he stated that at the time of the audit which was conducted by plaintiff, the corporation had no documents to corroborate any sales for resale.

*Morris Bublick under section 60*

He was the corporation's president. He did not spend any time at the store nor was he aware of how the tax forms were prepared.

*For defendants:*

*Earl Kessler*

He is a certified public accountant. He supervised and prepared two documents which show the cash position of the corporation during the 4½-year period preceding April 30, 1974.

On November 25, 1974, the trial court entered two judgments to supplement its September 25, 1974, judgment of liability against the corporation. In the first, the trial court adjudged that plaintiff take nothing from defendants Morris Bublick, David Holland and Sol N. Garland. In the second, the trial court found the September 25, 1974, judgment remained unsatisfied, the corporation was unable to pay the judgment, and defendant Max Bublick had the responsibility for filing and payment of the tax. Based upon these specific findings, the trial court adjudged defendant liable in the amount of $107,932.73.

OPINION

■■ Defendant contends that the evidence did not establish that plaintiff instituted proper proceedings for the collection of unpaid taxes against the corporation before proceeding against the individual defendants. Section 13½ of the Retailers' Occupation Tax Act provides that the corporate officer will be personally liable only "in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department." (Ill. Rev. Stat. 1971, ch. 120, par. 452½.) The precise issue of what constitutes proper proceedings for collection appears to be one of

first impression. However, section 5 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 444) gives plaintiff the right to bring suit to recover unpaid taxes and further provides that "[e]xecution shall issue upon such judgment upon the request of the Department, and all laws applicable to sales on execution shall be applicable to sales made under such judgments." For this reason, actions for recovery of retailers' occupation taxes have been characterized as common-law actions of debt. *Department of Revenue v. Joch*, 410 Ill. 308, 102 N.E.2d 155; 31 Ill. L. & Pr. *Retailers' Occupation Tax* §36 (1957).

■■ In the instant case, the evidence at trial fails to establish that plaintiff pursued even one of the myriad of summary remedies which are available to a judgment creditor before proceeding against the corporate officers under section 13½. In fact, plaintiff proceeded simultaneously by its two-count complaint against both the corporation and the officers. Even if we consider that the judgment against the corporation preceded the judgment against defendant by two months, plaintiff still failed to produce any evidence that it had employed any form of execution on the initial judgment prior to the entry of the later judgment. Since the judgment of personal liability was not entered *after* proper proceedings for the collection of the taxes from the corporation, we believe that the trial court erred and the judgment must be reversed.

We will not speculate based upon this record whether the corporation's financial structure would have been able to adequately satisfy its liability to plaintiff at the time the corporation admitted its liability a period of some two years and three months before the initial judgment was entered. We do note, however, although there was a substantial amount of money in a corporate bank account which could have been applied to the corporate indebtedness, plaintiff failed to pursue its rights to that account at the time of defendant's trial.

■■ Finally, plaintiff has argued on oral argument that defendant admitted in his answer that proper proceedings were followed. While defendant did admit that the corporation was unable to pay the amount due, he did not respond to the allegation of proper proceedings. Generally, allegations not specifically denied by defendant are deemed admitted. (Ill. Rev. Stat. 1975, ch. 110, par. 40.) It is well established, however, that legal conclusions are not admitted by the failure to plead thereto. (*People ex rel. Lacanski v. Backes*, 19 Ill. 2d 541, 169 N.E.2d 80; *Serletic v. Jeromell*, 324 Ill. App. 233, 57 N.E.2d 896.) Since the determination of what constitutes a proper proceeding under the Act is clearly a legal conclusion, we believe that plaintiff's argument cannot be sustained.

In light of our finding that plaintiff failed to employ the proper proceedings for collection against the corporation, we need not reach

defendant's other contention in this opinion. The judgment of the circuit court is reversed.

Reversed.

BARRETT, J., concurs.

Mr. JUSTICE SULLIVAN, dissenting:

I cannot agree with the opinion of the majority. Involved here is section 13½ of the Act (Ill. Rev. Stat. 1973, ch. 120, par. 452½), which provides that an officer or employee who has the control, supervision or responsibility of filing returns and making payment of the amount of taxes imposed and who wilfully fails to do so shall be personally liable for the tax, including penalties and interest, "in the event that'after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department * * *." It is the quoted phrase that we are concerned with and particularly the intent of the legislature in its use of the words "proper proceedings."

It should initially be noted that Bublick and the corporation admitted in their answer to plaintiff's complaint that the corporation was unable to pay the tax. The record also discloses that in mid-1972 plaintiff's auditors assessed a deficiency of over $92,000, which was admitted in an amended return by the corporation reflecting this amount. Only $5,000 was paid, and thereafter the corporation ceased to do business. After payment of all debts and expenses, there was left approximately $11,000, consisting of prepaid sales tax, accrued interest, accounts receivable, and layaway receivables. Thus, there appears no question that the corporation was unable to pay its tax in January, 1974, when plaintiff brought this action. Judgment thereafter was first entered against the corporation, and two months later, following a bench trial, judgment in like amount was entered against Bublick.

The majority, however, would reverse the judgment against Bublick because it "was not entered after proper proceedings for the collection of the taxes from the corporation." It is difficult to understand this conclusion in view of the admissions by Bublick and the corporation that (1) plaintiff did attempt to collect the taxes from the corporation; and (2) the corporation was unable to pay them. Specifically, the majority found that proper proceedings to collect were not undertaken because "the evidence at trial fails to establish that plaintiff pursued even one of the myriad of summary remedies which are available to a judgment creditor before proceeding against the corporate officers under section 13½" and "failed to produce any evidence that it had employed any form of execution on the

initial judgment [against the corporation] prior to the entry of the later judgment [against Bublick]."

It is apparent that the majority views "proper proceedings" to mean that some form of post-judgment legal action to collect should have been taken against the corporation before the entry of judgment against Bublick. This construction does not appear to be justified for a number of reasons. First, the phrase "proper proceedings" is not further defined in the Act and there is no requirement in the Act that any post-judgment collection action be taken against a corporation before personal liability of an officer attaches. Second, to require such action would result in unnecessary and perhaps extended litigation as to whether the proceedings undertaken to collect were proper. This undoubtedly would cause delay in the collection of taxes which, in my opinion, would render the law ineffective and any such result should be avoided if the Act is susceptible of a more effective construction. (*People ex rel. Barrett v. Thillens*, 400 Ill. 224, 79 N.E.2d 609.) In this regard, it has been held that statutes relating to the collection of taxes must be given a meaning to avoid making it difficult or impossible for the taxes to be legally collected. (*People ex rel. Nash v. Chicago & Northwestern R.R. Co.*, 359 Ill. 435, 194 N.E. 560.) Third, to hold that post-judgment collection action in some form be undertaken against the corporation here is to require the performance of a useless act which, in my opinion, should be obviated by the corporation's admitted inability to pay. See *Wurster v. Albrecht*, 237 Ill. App. 284.

My examination of the Act in the light of the rule that it must be given a reasonable and common sense meaning to avoid making it difficult or impossible to collect the taxes (*People ex rel. Nash*), convinces me that the legislature did not intend to require that plaintiff take any useless post-judgment action to collect from a corporation whose inability to pay was admitted. Because the majority has reversed for the sole reason that such action was not taken, I must respectfully dissent from its opinion.